IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:21-cv-00283-RBJ

CLIVE EDWARD DAWSON,

    Petitioner,

v.

MARIAH DYLLA, f/k/a Mariah Dawson,

    Respondent.

## ORDER

Clive Edward Dawson filed a petition seeking enforcement of a foreign parenting order pursuant to the International Child Abduction Remedies Act on January 28, 2021. Mariah Dylla, formerly Mariah Dawson, filed an answer on March 18, 2021. Both parties represent themselves pro se. The Court heard argument on March 23, 2021.

### I.  FACTS

The Court has pieced together the following history of this matter from the pleadings, the documents submitted as exhibits to the petition, and the parties statements during the March 23, 2021 hearing:

1.    Mr. Dawson, a citizen of the United Kingdom, and Ms. Dylla, a citizen of the United States, met in the United States and were married in New Mexico on September 18, 2011.

At the time he was an IT consultant, and she was an attorney. They moved to the U.K., and their child Rory was born there on April 12, 2013.

2.     On July 10, 2015 the parties separated. Thereafter, Ms. Dawson expressed her desire to relocate with the child to the U.S. Mr. Dawson opposed removal of the child. On January 11, 2016 a family court in Manchester, England determined that it was in the child's best interest for her to live with her mother in the U.S.[1] It granted the father parenting time on at least three occasions per year, twice in the U.S. and once in the U.K. The periods of his parenting time in the U.S. would each be between three and four weeks in duration, and the period in the U.K would be for a minimum of two weeks. The parents would alternate Christmas with the child. The mother was directed to make the child available for "Google Hangouts" with the father, essentially video calls, for 5-15 minutes every other day, and vice-versa for the mother when the child is with the father. *See* ECF No. 1 at 46-53 (excerpts of the orders).

3.     On January 19, 2016 Ms. Dawson filed a petition in the District Court for Elbert County, Colorado to register the British child custody order pursuant to Colo. Rev. Stat. § 14-13-305. *Id.* at 42.

4.     Shortly after the Manchester court's order was registered in Elbert County, Ms. Dylla filed a petition in Elbert County to restrict Mr. Dawson's parenting time, raising concerns about Mr. Dawson's behavior and the child's reactions while in England. On September 22, 2016 the court denied the petition. *Id.* at 66. It found that the Manchester court presumably considered the same information in reaching its parenting time decision, and that the mother had

---

[1] The parenting time and divorce issues were pursued separately. The Manchester court issued the parenting time orders under an act pertaining to children. A Liverpool court later issued the divorce under a different statute.

not alleged that the father had engaged in physically or emotionally abusive behavior towards the child since the entry of the Manchester court's orders. The court stated that it would not "act as a reviewing court for that foreign court's determinations." *Id.*

5. On November 23, 2016 a family court in Liverpool, England conducted a hearing on Mr. Dawson's petition for a divorce. *Id.* at 72. The matter was not concluded at that time.

6. In February 2017 Mr. Dawson filed an emergency verified motion in the District Court for Elbert County to restrict Ms. Dylla's parenting time. On February 13, 2017 the court denied the emergency motion, finding that Mr. Dawson had not sufficiently alleged that Rory was in imminent physical or emotional danger. The court added that "[p]arenting time has previously been determined and parenting time with both parents is very important for the child's well being. The parties are to comply with the parenting time orders that have been entered." *Id.* at 68.

7. The Elbert County court held a hearing concerning parenting time issues on February 22, 2017. On March 27, 2017, the court issued a written order, finding that Ms. Dylla had violated the existing parenting time order by denying Mr. Dawson parenting time in Colorado in the fall of 2016 and in February 2017. It further found that it was in the best interest of the child that (1) Mr. Dawson have specific parenting time as set forth in the order during the remainder of his current stay in the U.S.; (2) Mr. Dawson would have make-up parenting time up to four weeks in Colorado in 2017 in addition to his regular parenting time; (3) this parenting time would be exercised in the Denver metro area; (4) during such parenting time Mr. Dawson would not remove the child from Colorado without a court order; (5) Mr. Dawson would also have make-up parenting time in the U.K. in 2017 as specified in the order; (6) Mr. Dawson

would inform Ms. Dylla of the address where he and Rory would be staying during his parenting time in the U.S. and the U.K.; (7) during his parenting time Mr. Dawson would make Rory available for "Google Hangouts" with Ms. Dylla every other day; (8) Mr. Dawson would ensure that Rory was placed in an appropriately installed car seat while in an automobile; (9) Rory would sleep in her own bed during Mr. Dawson's parenting time; and (10) the parties may send each other a maximum of two emails per day, limited to 500 words per email. *Id.* at 69-71.

8. A second hearing on the pending divorce was held in the Liverpool court on July 27, 2017. On August 15, 2017, the court issued an order in which it noted that the parties were contesting whether the divorce would proceed in Liverpool or Elbert County. The court referenced the Manchester court's parenting time order of January 11, 2016. It noted that a "mirror order" had been registered in the mother's local court in Elbert County, Colorado, and that "[t]here has been and is extensive litigation in respect of that order in Colorado." *Id.* at 72. Nevertheless, the Liverpool court held that it was appropriate that the divorce be handled in the British courts, noting that Mr. Dawson was reliant on Ms. Dylla for funds to travel to the U.S., whereas Ms. Dylla had no such practical or financial difficulties in travelling to the U.K. *Id.* at 74. It noted that Ms. Dylla's attorney had encouraged Mr. Dawson to consider a no fault divorce since the parties had now been separated for the requisite period of time, and that although Mr. Dawson had not been receptive, the court urged the parties to conclude the formal dissolution of their marriage without further expense or delay. *Id.* at 77.

9. On December 10, 2018 the Elbert County District Court held a status conference. The Court has not been provided a transcript of that conference.

10. The divorce was decreed "absolute" by the Liverpool court on March 8, 2019.

4

11. On January 17, 2019 the District Court for Elbert County, Colorado apparently requiring Mr. Dawson to appear on February 11, 2019. I have not seen this order, but Ms. Dylla represented during the March 23, 2021 hearing that the subject matter was to be child support and allocation of travel costs.

12. According to Ms. Dylla, the last time Mr. Dawson saw Rory was in February 2019. However, he did not appear for the scheduled February 11, 2019 hearing.

13. On February 11, 2019 the District Court for Elbert County, Colorado issued a Temporary Custody Order in which it noted that it had issued a warrant for the arrest of Mr. Dawson for his willful failure to appear in violation of the January 17, 2019 order. The court added,

> Unless and until ordered otherwise by this Court, the child, Rory Elina Dawson, dob 4/12/2013 shall be in the custody of her mother, Mariah Dylla Dawson. The child's school shall not permit the child to be released to Respondent, Clive Edward Dawson, absent further court order.

ECF No. 1 at 61.

14. On February 15, 2019 one of the parties (the Court has not been informed which one) filed a motion to modify parenting time and decision-making authority. I do not know what action, if any, was taken on that motion.

15. On July 25, 2019 Mr. Dawson last saw Rory on video. He claims that Ms. Dylla thereafter cut off all video contact between him and Rory. According to Mr. Dawson, there has been an ongoing appeal since July 2019. I do not know what that appeal is or where it is pending.

16. At some point Mr. Dawson filed a motion in the Elbert County District Court for enforcement of the Manchester court's custody order. On December 13, 2019 the court denied

the motion. It reiterated that on February 11, 2019 it had issued a warrant for Mr. Dawson's arrest, and "until that warrant is resolved, it is in the best interests of the child not to be with Respondent in unsupervised parenting time lest he be arrested on the outstanding warrant. Since that time, the Court therefore has suspended all unsupervised parenting time of the child with Respondent." *Id.* at 62. Mr. Dawson's was only allowed parenting time if supervised by a professional supervisor in Elbert County, Colorado. *Id.*

17. On December 16, 2019 the Elbert County District Court ordered the parties to contact the division clerk to set the matter for a status conference. They did not comply. Therefore, on February 11, 2020 the court denied all pending motions without prejudice and ordered the division clerk to close the case. *Id.* at 78.

18. As indicated above, Mr. Dawson filed the present action on January 28, 2021. He seeks "to enforce compliance by the Defendant with the Final Hearing Order which was also registered. . . as a 'mirror order' in Colorado." *Id.* at 15.

## II. THE HAGUE CONVENTION.

The Hague Convention on the Civil Aspects of International Child Abduction was adopted in 1980 to combat cross-border child abductions. The United States adopted it in 1986 and implemented it through the International Child Abduction Remedies Act. *See* 22 U.S.C. §§ 9001-9011 (2014). The objects of the Hague Convention are (1) to secure the prompt return of children wrongfully removed to any contracting State, and (2) to ensure that rights of custody under the law of one contracting State are respected in other contracting States. art. I(a)–(b).

"[T]he scope of a court's inquiry under the Hague Convention is limited to the merits of the abduction claim." *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001). A purpose of the

6

Convention is to remove the motivation for wrongful removals by requiring the country to which a child has been removed to return the child to his or her country of "habitual residence," absent the establishment of certain narrow defenses or exceptions. *Asvesta v. Petroutsas*, 580 F.3d 1000, 1003-04 (9th Cir. 2009). Wrongful removal occurs when a parent breaches the other parent's custody rights which have not been waived. art. III. Article XI urges courts to use the remedy of ordering the child's return where there has been a wrongful removal. If proceedings are brought within one year of the wrongful removal, the court must order it. art. XII. When the procedures have been initiated more than a year from the wrongful removal, courts are still encouraged to require the child's return unless extenuating circumstances justify the child's retention. *See id*.

The Hague Convention requires a petitioner to prove three things by a preponderance of the evidence: (1) the minor child was in the child's country of habitual residence at the time of removal; (2) the removal was in breach of the petitioner's custody rights; and (3) the petitioner never waived those rights. *See* art. III. If prima facie proof is made, the burden then shifts to the respondent to establish that one of the exceptions in the Convention. *Padilla v. Troxell*, 850 F.3d 168, 175 (4th Cir. 2017). *See also Hague International Child Abduction Convention: Text and Legal Analysis*, 51 Fed. Reg. 10494, 10509 (1986) (Public Notice 957).

The court conducting proceedings under the Hague Convention does not have jurisdiction to adjudicate the merits of the underlying custody dispute. Rather, the evidentiary hearing serves to determine whether the child's abduction itself was unlawful and necessitates the child's return. *See* 22 U.S.C. § 9001(b)(4); *Neves v. Neves*, 637 F. Supp. 2d 322, 334 (W.D.N.C. 2009) ("[A] district court deciding a petition for return of a child has jurisdiction to decide the merits of the

wrongful removal claim, but it may not decide the merits of the underlying custody dispute") (quoting *Kufner v. Kufner*, 519 F.3d 33, 38 (1st Cir. 2008)); *see* art. XIX ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue…").

Therefore, this Court is not permitted to engage in a "best interest of the child" analysis, as a Colorado state court would do in a typical domestic relations case. Issues "underlying the custody dispute are presumptively to be adjudicated in the place of the child's habitual residence." *McManus v. McManus*, 354 F. Supp. 2d 62, 69 (D. Mass. 2005). In sum, the district court's role is to decide whether: (1) the abduction was lawful, (2) returning the child would be safe, and (3) the country of habitual residence is the appropriate venue for the underlying custody dispute.

## ANALYSIS AND CONCLUSIONS

The evidence establishes that there has been no abduction or wrongful removal of the parties' child. Ms. Dylla brought Rory to the U.S. in 2016 with the express permission and order of the family court in Manchester, England. The child's habitual residence has been in the U.S., and in particular in Colorado, since that time. The Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act have no application to this case.

The problem here is that the parents have been unable or unwilling to comply with the parenting time orders that were originally issued by the Manchester court, and that have been registered in – and to some extent modified by – the District Court of Elbert County, Colorado. As a former Colorado state district judge who presided over literally thousands of parenting time

disputes in that capacity, I am concerned that the best interests of the child are not being served, due largely to the behaviors of the two parents. Generally speaking, it is in the best interest of children to spend quality time with both parents. That plainly was the desire of both the Manchester court and the Elbert County District Court. However, this Court cannot sit as a court of appeal from either of those courts in the guise of exercising its authority under the International Child Abduction Remedies Act.

It appears to this Court that Mr. Dawson has one, and possibly two, options. His best option appears to be to turn himself in on the outstanding warrant in Elbert County, Colorado. After addressing the warrant, he can presumably either move to reopen the Elbert County case or file a new action in Elbert or Douglas County, where I think the child now lives. The Elbert or Douglas County District Court would then address parenting time, decision-making and child support issues. Mr. Dawson is a student nurse, and there is some indication in the record that he might have pursued this new career in contemplation of relocation to the U.S. If he were to relocate to Colorado, then presumably the parenting time issues would be quite different. If he remains in the U.K., then the distance will continue to pose logistical and financial barriers. However, Colorado courts are well equipped to address those issues, as difficult as they might be.

Possibly a second option would be to seek modification of the original parenting time order in the Manchester court. However, Ms. Dylla stated during the March 23, 2021 hearing that the Liverpool court has expressly ceded jurisdiction over all matters pertaining to the child to the Elbert County District Court. I have not seen documentation to that effect, and Mr.

Dawson disputes this, but it would not surprise me. The U.S. has been the child's residence for the last five years, and both parties have actively litigated parenting issues in that court.

The Court urges both parties to retain counsel to assist them in resolving these issues if they are able to do so. If the parties are financially unable to retain counsel, they might wish to contact Colorado Legal Services at 303-837-1313 to explore whether there is a legal aid organization that could help on a low-fee or no-fee basis. In any event, it is evident that a federal court in Denver, Colorado is not the place to be.

## ORDER

Petitioner's petition to enforce a foreign parenting order in this Court is denied. This case is dismissed with prejudice.

DATED this 19th day of April, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge